GEORGE K. JAWLAKIAN (SBN 296692)
JAWLAKIAN LAW GROUP APC
16130 VENTURA BOULEVARD, SUITE 500
ENCINO, CA 91436
TELEPHONE: 213-805-6500
FACSIMILE:   844-633-2467
Attorney for Plaintiffs
NEIGHBORHOOD MARKET ASSOCIATION, INC.,
VAPIN' THE 619

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEIGHBORHOOD MARKET ASSOCIATION, INC., and VAPIN' THE 619,<br><br>        Plaintiffs,<br><br>   v.<br><br>COUNTY OF SAN DIEGO,<br><br>        Defendant. | Case No. **'20CV1124 W    WVG**<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF

Plaintiffs, NEIGHBORHOOD MARKET ASSOCIATION, INC. ("NMA"), and one of its members, VAPIN' THE 619, a California corporation, ("VAPIN" together with NMA, collectively, "Plaintiffs"), by and through their undersigned counsel, submit this Complaint for Declaratory Judgment and Injunctive relief against Defendant – COUNTY OF SAN DIEGO ("San Diego") – and allege as follows:

## INTRODUCTION

1. Plaintiffs seek to enjoin the County of San Diego from enforcing the recently enacted Ordinance 10647, amending Chapters 8.8 and 8.9, of the San Diego County Code (the "Ordinance," attached hereto as Exhibit A), imposing tobacco product standards, and prohibiting the sale and distribution of "Flavored Smoking Products," within the County of San Diego.

2. The Ordinance also seeks to impose a one-year prohibition on sale of "Electronic Smoking devices," or alternatively provide an exemption to specific products that the Center for Disease Control and Prevention ("CDC") determines are not casual factors associated with lung injury or illness.

3. There is no evidence to indicate that the CDC intends to, or has ever intended to, release information relating to the casual health factor of specific electronic smoking devices. Contrastingly, the CDC has reported that, "[n]ational and state data from patient reports and product sample testing show tetrahydrocannabinol (THC)-containing e-cigarette, or vaping, products, particularly from informal sources like friends, family, or in-person or online dealers, are linked to most EVALI cases and play a major role in the outbreak."[1]

4. The CDC affirmatively disclosed that the source of the recent lung-related injuries are directly related to products containing THC sold in the black

---

[1] Centers for Disease Control and Prevention, *For State, Local, Territorial, and Tribal Health Departments*, April 17, 2020, https://www.cdc.gov/tobacco/basic_information/e-cigarettes/severe-lung-disease/health-departments/index.html

market, and not nicotine-based products. Yet, San Diego continues to seek the prohibition of all electronic smoking devices and flavored tobacco products.

5. "Electronic smoking devices," also known as "electronic cigarettes," "e-cigarettes," or "vapor products," are electronic devices used by consumers to aerosolize and inhale a liquid mixture containing nicotine ("e-liquid"), in a manner similar to that of actual tobacco smoke, but without the fire, tar, carbon monoxide, ash, or smell associated with traditional cigarettes.

6. San Diego claims the purpose of enacting the Ordinance is to curb the recent increase in youth tobacco consumption. While San Diego rightfully attempts to deter youth from tobacco use, the Ordinance's categorical vapor tobacco product ban also incidentally encompasses open-tank vapor systems, which are tobacco products predominantly linked to adult consumption.

7. The Food and Drug Administration ("FDA") recently conducted a comprehensive investigation, including data analysis of various studies focused on youth and adult tobacco product consumption, and concluded that flavored cartridge-based vapor products (i.e. JUUL products) are the overwhelming cause of the recent increase of youth tobacco consumption.[2] In determining an effective policy that benefits public health, FDA "seeks both (1) to avoid foreclosing, one potential means by which some adult smokers might seek to transition completely away from combusted tobacco products to potentially less harmful tobacco products; and (2) to prevent minors' access to [vapor] products. FDA believes that this policy strikes an appropriate balance between restricting youth access to [vapor] products and maintaining the availability of potentially less harmful options

---

[2] FDA, *Enforcement Priorities for Electronic Nicotine Delivery System (ENDS) and Other Deemed Products on the Market Without Premarket Authorization* (revised April 29, 2020), available at <https://www.fda.gov/media/133880/download>

- 3 -  COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

for current and former adult smokers who have transitioned or wish to transition completely away from combusted tobacco products."[3]

8. The FDA finalized its policy by prohibiting the sale of cartridge-based vapor products, while continuing to allow the sale of open-tank vapor products.[4]

9. *First*, Plaintiffs seek relief on the grounds that the federal statutory law expressly preempts the Ordinance under the Supremacy Clause of the United States Constitution.

10. The manufacture and sale of tobacco products are subject to intensive regulation by the Federal Government.

11. In striking a balance between federal authority and state and local authority over the regulation of tobacco products, Congress expressly denied states and local governments of the ability to promulgate tobacco product standards that are different from or in addition to federal standards.

12. San Diego's ban on flavored tobacco products, however, is a product standard because it regulates the ingredients and additives in those products. San Diego's ban is therefore expressly preempted by federal law.

13. *Second*, Plaintiffs also seek relief on the grounds that federal statutory law impliedly preempts the Ordinance, because the San Diego Ordinance stands as an obstacle to the purposes of federal law.

14. Congress authorized the FDA to promulgate tobacco product standards that, in appropriate circumstances, can establish uniform, national standards for the manufacture and sale of all tobacco products and the ingredients used in such products.

---

[3] *Id.*
[4] *Id.*

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF

15. Congress and the FDA have made the judgment that certain tobacco products, particularly open-tank flavored tobacco products, should remain available to adult users of tobacco products.

16. San Diego's Ordinance, however, conflicts with those federal goals and must give way.

17. Plaintiffs will be irreparably harmed by the Ordinance's imminent enforcement, since their inventory is primarily comprised of vapor tobacco products and will therefore be forced to shut down their business operations entirely.

18. The Ordinance will not only destroy San Diego's nicotine vapor product industry but will also damage the livelihoods of the workers that it employs.

19. The Ordinance will likely precipitate a public-health crisis, as vapor-products users turn either to combustible cigarettes or to black-market sources to obtain vapor tobacco products.

## JURISDICTION AND VENUE

20. Because this Action arises under the Constitution and laws of the United States, this Court has jurisdiction under 28 U.S.C. § 1331.

21. This Court is authorized to grant declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

22. Venue for this Complaint is proper in the Southern District of California pursuant to 28 U.S.C. § 1391, because the events giving rise to the suit occurred in this District, and it is where the County of San Diego is geographically located.

## PARTIES

23. NMA is a local non-profit industry trade association, comprised of various family-owned businesses within the County of San Diego. NMA has members who are tobacco retailers, wholesalers, and manufacturers located in the unincorporated areas of San Diego County, that are subject to the recently enacted

1  Ordinance, and sell both on-site and online, *inter alia*, nicotine products containing
2  flavored e-liquids, and other electronic cigarette tobacco products.

3      24.      VAPIN' the 619 ("VAPIN"), is a vapor tobacco products retailer
4  located within the County of San Diego, California, and is an NMA member.
5  VAPIN exclusively sells electronic smoking devices and e-liquid tobacco products
6  used in conjunction with such devices. VAPIN and its employees now face
7  financial ruin as a result of the Ordinance.

8      25.      Defendant County of San Diego ("County" or "San Diego") is a public
9  entity established under the Constitution and the laws of the State of California.

## FACTUAL BACKGROUND

**I.    San Diego's Ban on Flavored Smoking Products**

    26.      On January 28, 2020, the San Diego Board of Supervisors (the "Board") debated the enactment of the Ordinance, and appeared to not fully comprehend the regulating authority of both the CDC and the FDA as it relates to tobacco products.[5] One Supervisor stated, "our hope is that the CDC will take action before the [effective date]," to which County Counsel responded by incorrectly claiming that the FDA and CDC are the partnered together in establishing tobacco products regulations, and erroneously stated that "e-cigarette products are not currently legal [under the FDA]."[6] Based on their inaccurate understanding of the FDA's and CDC's authority, the San Diego Board of Supervisors proceeded with and approved the Ordinance categorically prohibiting the sale of electronic smoking devices and flavored smoking products.

    27.      The Ordinance, the prescribed definitions contained therein, and the San Diego County Code in its entirety, ban the sale and distribution of flavored smoking products, irrespective of whether San Diego retailers sell vapor products

---

[5] County of San Diego, *Board of Supervisors Meeting*, (Jan. 28, 2020, *available at* <https://sdcounty.granicus.com/MediaPlayer.php?view_id=9&clip_id=2612 >
[6] *Id*.

- 6 -      COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

exclusively on-site, exclusively online, or a combination of both. San Diego Cnty. Code § 32.883. San Diego fails to define the term "sale" while defining "distribution" as "to give smoking products to the general public at no cost, or nominal cost, or to give coupons, coupon offers, gift certificates, gift cards, or other similar offers, or rebate offers for smoking products to the general public at no cost or at nominal cost." *Id*. § 32.882(a).

28. Under the Ordinance, a "Flavored Smoking Product" is defined to mean "a product containing, made, or derived from tobacco or nicotine that is intended for smoking, and that emits a taste or smell, other than the taste or smell of tobacco, including, but not limited to, any taste or smell relating to fruit, menthol, mint, wintergreen, chocolate, cocoa, vanilla, honey, candy, dessert, alcoholic beverage, herb, or spice." *Id*. § 32.882(b).

29. The Board arbitrarily carves out an exception for "Shisha" tobacco products, and defines "Shisha" to mean, "a flavored smoking product that is traditionally mixed with molasses, honey, fruit pulp, or dried fruits and is sold for use in a water pipe known as a hookah." *Id*. § 32.882(c) *See also Id*. § 32.883(b).

30. The Board also categorically bans the sale of all electronic smoking devices for a one-year period. *Id*. § 32.892(b) *See also Id*. § 32.893(a).

31. As explained in greater detail below, the Ordinance's outright prohibition of all vapor products, and its modification of tobacco product standards relating to the use of characterizing ingredients in certain flavored smoking tobacco products, are exclusively reserved for the FDA and preempted by the Family Smoking Prevention and Tobacco Control Act.

II. **Federal Preemption of Flavored Smoking Products**

32. Tobacco products, including flavored e-liquids, are already heavily regulated by the FDA.

33. In 2009, Congress enacted the Family Smoking Prevention and Tobacco Control Act (the "TCA"), (21 U.S.C. §§ 387-387u). The Act vests the

FDA with the authority to regulate the retail sales, ingredient formulations, and labeling, of tobacco products to protect the public health generally. 21 U.S.C. § 387, *et seq*. Indeed, the TCA established the FDA as "the primary Federal authority with respect to the manufacture, marketing, and distribution of tobacco products." *Id*.

34. The TCA defines "tobacco product" as "any product *made or derived from tobacco* that is intended for human consumption." 21 U.S.C. § 321(rr)(1) (emphasis added).

35. Congress passed the TCA to, "authorize the [FDA] to set national standards controlling the manufacture of tobacco products and the … amount of ingredients used in such products." *Id*. Accordingly, the TCA empowers the FDA to adopt "tobacco product standards," 21 U.S.C. § 387g, including "provisions respecting the ... additives ... of the tobacco product," *Id*. § 387g(a)(4)(B)(i). The term "additives" includes "substances intended for use as a flavoring." *Id*. § 387(1).

36. When Congress enacted the TCA, it created one specific tobacco product standard in the form of a "Special Rule for Cigarettes" in addition to a series of other tobacco product standards. The Special Rule for Cigarettes prohibits the use in cigarettes of a "constituent" or "additive" that is "characterizing flavors" other than the flavor of tobacco or menthol. 21 U.S.C. § 387g(a)(1)(A). But the TCA expressly reserves "menthol cigarettes" to the FDA's regulatory authority. *See id*. (noting "the Secretary's authority to take action... applicable to menthol"). To date, the FDA has chosen not to ban the use of menthol in cigarettes. In fact, the FDA has issued advance notices of proposed rulemaking contemplating the adoption of "tobacco product standard[s]" banning various flavored tobacco products, including menthol cigarettes and flavored vapor products. *See, e.g.*, *Menthol in Cigarettes, Tobacco Products; Request for Comments*, 78 Fed. Reg. 44,484, 44,485 (July 24, 2013); *Regulation of Flavors in Tobacco Products*, 83

Fed. Reg. 12,294, 12,299 (Mar. 21, 2018). However, it has never banned tobacco or menthol tobacco products.

37. The TCA further expanded the FDA's authority by adding Chapter IX to the federal Food, Drug and Cosmetic Act ("FDCA"), and significantly altering federal regulation of tobacco products by granting the FDA the statutory authority to regulate tobacco products, including flavored tobacco products.

38. On May 10, 2016, the FDA published its Final Rule Deeming Tobacco Products To Be Subject to the Federal Food, Drug, and Cosmetic Act ("Final Rule"). 81 FR 28974. The Final Rule brings all tobacco products, *including flavored e-liquids and e-cigarette devices*, under the FDA's control and jurisdiction. *See* 81 Fed. Reg. 28,973 – 29,106 (May 10, 2016). Since the Final Rule took effect, all new tobacco products, including flavored tobacco products, have been required to comply with a number of regulatory requirements imposed by the TCA and enforced by the FDA.

39. The TCA provides the FDA with the authority to ensure the existence of uniform, national tobacco product standards, and preempts state and local regulations that set requirements "different from, or in addition to," the FDA's or TCA's requirements relating to "tobacco product standards." 21 U.S.C. § 387p(a)(2)(A) ("Tobacco Preemption Clause"). Furthermore, the Tobacco Preemption Clause ensures that tobacco manufacturers will have to comply with only one set of product specifications nationwide – rather than being forced to comply with potentially hundreds of different requirements set by different states and local   jurisdictions governing the same products. *See* 21 U.S.C. § 387, note.

40. The TCA also contains a narrow savings clause, which provides that the Tobacco Preemption Clause "does not apply to requirements relating to the sale [and] distribution ... of ... tobacco products by individuals of any age." *Id*. § 387p(a)(2)(B). But the savings clause narrows the category of permissible state and local requirements to those that turn on the "age" of the "individuals" buying or

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF

using the regulated tobacco products. *Id*. And even if the savings clause applies beyond age-based requirements, the clause does not protect state and local laws that prohibit a product's sale and distribution altogether, but rather only more limited laws that regulate the time, place, and manner of the product's sale and distribution. *See* § 387p(a)(1); § 387p(a)(2)(B).

41. The FDA's "premarket approval" application is only required for "new tobacco products" as defined by the FDA. 81 FR 28974. The FDA requires various other requirements and guidelines products that were already in the market and not deemed to be "new tobacco products." *Id*.

## FIRST CLAIM FOR RELIEF

### Express Preemption

42. Plaintiffs re-allege paragraphs 1 through 41 above as if fully set forth herein.

43. The Supremacy Clause of the United States Constitution provides that the "Constitution, and the Laws of the United States which shall be made in Pursuance thereof ... shall be the supreme Law of the Land." U.S. Const. art. VI. Thus, state laws and local ordinances that conflict with federal law are "without effect." *Maryland v. Louisiana*, 451 U.S. 725, 746 (1981).

44. The TCA states that any state or local regulation "different from," or "in addition to," the tobacco product standards promulgated by the TCA is preempted: "No State or political subdivision of a State may establish or continue in effect with respect to a tobacco product any requirement which is different from, or in addition to, any requirement under the provisions of this chapter relating to *tobacco product standards*, premarket review, adulteration, misbranding, labeling, registration, good manufacturing standards, or modified risk tobacco products." 21 U.S.C. § 387p(a)(2) (emphasis added).

45. Under the recently enacted Final Rule, the FDA's authority has been enlarged to include all tobacco products, including electronic cigarettes.

46. Congress entrusted the FDA with the sole ability to further regulate the ingredients or general sale of all tobacco products, including electronic cigarettes.

47. However, the San Diego Ordinance bans the sale of electronic smoking devices, while creating a tobacco product standard different from the FDA's standard, by forcing all electronic smoking devices through the FDA's premarket approval process.

48. In addition, the San Diego Ordinance, bans the sale of all flavored smoking products, except for products that include "molasses, honey, fruit pulp, or dried fruits and [] sold for use in a water pipe..." thereby creating a tobacco product standard.

49. As such, the Ordinance's blanket prohibition of electronic smoking devices and all flavored smoking products are expressly preempted by the TCA.

50. The San Diego Ordinance falls outside the scope of the savings and preservation clauses and falls squarely within the preemption clause of the TCA.

51. The narrow savings clause in the TCA provides that the preemption clause "does not apply to requirements relating to the sale, distribution, possession ... or use of, tobacco products by individuals of any age." 21 U.S.C. § 387p(a)(2)(B).

52. The distinction between the preservation clause and savings clause is important to note. The preservation clause subjects any prohibition on the sale to the limits contained in the preemption clause. On the other hand, the savings clause allows states to place *requirements* relating to the sale.

53. The savings clause in no way allows states to prohibit the categorical sale of tobacco products, which is precisely what the Ordinance seeks to accomplish.

54. Accordingly, the Ordinance's attempt to prohibit the sale of electronic smoking devices and all flavored smoking products, and its attempt to redefine and regulate tobacco product standards, are preempted by the TCA.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

55. The Ordinance attempts to disrupt the FDA's careful balancing of policy and health interests by prohibiting the sale of flavored smoking products, and is usurping the FDA's authority by attempting to regulate and redefine tobacco product standards.

56. Under the TCA's preemption clause, San Diego is prohibited from enacting and enforcing ordinances that are "different from, or in addition to," any of the TCA's or FDA's requirements relating to federal "tobacco product standards." 21 U.S.C. § 387p(a)(2)(A). Here, San Diego's ban on vapor products is "different from, or in addition to," the requirements of federal law, and is thus preempted.

57. Accordingly, the TCA preempts the San Diego Ordinance's ban on electronic smoking devices and flavored smoking products, rendering it invalid and unenforceable.

## SECOND CLAIM FOR RELIEF

### Implied Preemption

58. Plaintiffs re-allege paragraphs 1 through 57 above as if fully set forth herein.

59. "Obstacle preemption" occurs when a state law or local ordinance "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000).

60. One purpose of the Tobacco Control Act is "to authorize the [FDA] to set national standards controlling the manufacture of tobacco products and the ... amount of ingredients used in such products." Tobacco Control Act § 3(3), 123 Stat. at 1781 (codified at 21 U.S.C. § 387 note). San Diego's ban on tobacco products directly undermines the TCA's ability to set such national standards.

61. Consistent with its federal authority, the FDA has been expanding its regulation and enforcement of flavored vapor tobacco products.[7]

62. San Diego's ban on tobacco products directly conflicts with the federal government's ongoing and active efforts to address flavors in tobacco products, and is therefore preempted.

63. Accordingly, the TCA impliedly preempts the San Diego Ordinance, rendering it invalid and unenforceable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against Defendant and ask the Court for the following relief:

1. Pursuant to 28 U.S.C. § 2201, declaring that under the Supremacy Clause of the United States Constitution, the TCA preempts the Ordinance's ban on the sale of electronic smoking devices and flavored smoking products, rendering it invalid and unenforceable.

2. Pursuant to Federal Rule of Civil Procedure 65, preliminarily enjoin the County of San Diego from enforcing the Ordinance;

3. Permanently enjoin Defendant from enforcing the Ordinance;

4. Award Plaintiffs their costs and disbursements associated with this litigation under 28 U.S.C. § 2412 and other applicable authority; and

---

[7] *See, e.g.*, *Menthol in Cigarettes, Tobacco Products; Request for Comments*, 78 Fed. Reg. 44,484, 44,485 (July 24, 2013); *Regulation of Flavors in Tobacco Products*, 83 Fed. Reg. 12,294, 12,299 (Mar. 21, 2018); FDA, *Enforcement Priorities for Electronic Nicotine Delivery Systems (ENDS) and other Deemed Products on the Market Without Premarket Authorization* (May 2020) ("*Enforcement Priorities*") (announcing policy that effectively bans the sale of any flavored, cartridge-based ENDS product (*other than a tobacco- or menthol-flavored* ENDS product)), *at* https://www.fda.gov/regulatory-information/search-fda-guidance-documents/enforcement-priorities-electronic-nicotine-delivery-system-ends-and-other-deemed-products-market.

1      5.    Granting such other and further relief as this Court may deem just and proper.

DATED: June 19, 2020        JAWLAKIAN LAW GROUP, A.P.C.

By: */s/ George K. Jawlakian*
    George K. Jawlakian
    Attorneys for Plaintiffs
    NEIGHBORHOOD MARKET
    ASSOCIATION, and
    VAPIN' THE 619

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF