1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEIGHBORHOOD MARKET ASSOCIATION, INC., and VAPIN' THE 619,<br><br>                                          Plaintiffs,<br><br>v.<br><br>COUNTY OF SAN DIEGO,<br><br>                                          Defendant. | Case No.:  20-CV-1124 JLS (WVG)<br><br>**ORDER (1) DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND (2) GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>(ECF Nos. 4, 12) |

This Order addresses the constitutionality of a county ordinance that permanently bans the sale of flavored smoking products and temporarily bans the sale of electronic smoking devices in San Diego County.  Specifically before the Court are Plaintiffs Neighborhood Market Association, Inc. and Vapin' the 619's (collectively, "Plaintiffs") Motion for Preliminary Injunction ("Mot.," ECF. No. 4) and Defendant County of San Diego's ("Defendant" or "County") Motion to Dismiss Plaintiffs' Complaint ("MTD," ECF No. 12).  Also before the Court is the brief of Medical and Public Health *Amici Curiae* filed in Opposition to Plaintiffs' Motion for Preliminary Injunction ("*Amici* Br.," ECF No. 17).  The Court took these matters under submission without oral argument pursuant to Civil Local Rule 7.1(d)(1).  *See* ECF No. 29.  Having carefully considered the Parties'

pleadings, evidence, arguments, and the applicable law, the Court **DENIES** Plaintiffs' Motion for Preliminary Injunction and **GRANTS** Defendant's Motion to Dismiss, as follows.

## BACKGROUND

On January 28, 2020, the San Diego County Board of Supervisors adopted Regulatory Code Ordinance Number 10647 (the "Ordinance"), which was enacted on February 27, 2020 and became effective on July 1, 2020. *See generally* San Diego County, Cal., Code of Regulatory Ordinances, tit. 3, div. 2, ch. 8.8, §§ 32.871–32.895 (2020). The Ordinance (1) permanently prohibits the sale or distribution of flavored smoking products within San Diego County and (2) temporarily prohibits the sale or distribution of electronic smoking devices within San Diego County for a period of one year. *See generally id.* Plaintiffs seek to enjoin the County from enforcing both provisions of the Ordinance. *See generally* Mot.

First, the Ordinance prohibits the sale of certain tobacco products. The Ordinance bans "the sale or distribution of all flavored smoking products . . . in the unincorporated area of the County." San Diego County, Cal., Code of Regulatory Ordinances, tit. 3, div. 2, ch. 8.8, § 32.883(a) (2020). A "flavored smoking product" is defined as:

> [A] product containing, made, or derived from tobacco or nicotine that is intended for smoking, and that emits a taste or smell, other than the taste or smell of tobacco, including, but not limited to, any taste or smell relating to fruit, menthol, mint, wintergreen, chocolate, cocoa, vanilla, honey, candy, dessert, alcoholic beverage, herb, or spice.

*Id.* § 32.882(b). The ban exempts shisha, which is "a flavored smoking product that is traditionally mixed with molasses, honey, fruit pulp, or dried fruits and is sold for use in a water pipe known as a hookah." *Id.* § 32.872(b). Additionally, the prohibition on the sale of flavored smoking products does not apply to "a product that has been approved by the Food and Drug Administration for sale as a tobacco cessation product or for other

///

therapeutic purposes, where the product is marketed and sold solely for such an approved purpose." *Id.* § 32.883(c).

The Ordinance was enacted to combat the health risks associated with youth tobacco consumption. *See generally id.* § 32.881(a)–(g). The 2019 National Youth Tobacco Survey conducted by the Centers for Disease Control and Prevention ("CDC") and the Food and Drug Administration ("FDA") "showed that more than 5 million U.S. middle and high school students reported current e-cigarette use . . . [and] 27.5 percent of high school students reported current e-cigarette use, a percentage that has increased dramatically since 2018." *Id.* § 32.881(c). The County found that "[f]lavors, such as fruit, menthol, mint, candy, or dessert, hide the harshness of nicotine, making initiation of nicotine use easier among youth." *Id.* § 32.881(d). The County also was concerned with underage purchasers having access to tobacco products. The 2018 Young Adult Tobacco Purchase Survey "showed that tobacco and vape shops made sales to underage decoys 49.8 percent of the time, twice the rate of any other category of retailer." *Id.* § 32.881(g).

Second, the Ordinance temporarily banned, for a period of one year, the "sale or distribution of an electronic smoking device . . . ." *Id.* § 32.893(a). An "Electronic Smoking Device" is defined as:

> [A]n electronic and/or battery-operated device, which can be used to deliver an inhaled dose of nicotine or other substances whether manufactured, distributed, marketed, or sold as an electronic cigarette, an electronic cigar, an electronic cigarillo, an electronic pipe, or any other product name or descriptor.

*Id.* § 32.892(b). Like the flavored smoking products sales ban, the temporary prohibition on the sale of electronic smoking devices does not apply to "any product that the Food and Drug Administration has either granted premarket approval, or approved for use as a tobacco cessation product or for other therapeutic purposes where the product is marketed and sold solely for such an approved purpose." *Id.* The ban on the sale of electronic smoking devices expired on February 28, 2021. *Id.* § 32.893(a).

The San Diego County Board of Supervisors was motivated to adopt the temporary ban on electronic smoking devices because the "long-term health consequences of electronic smoking devices are unclear, but evidence is mounting that there are serious risks." *Id.* § 32.891(d). Among the suspected health risks is an illness called e-cigarette or vaping product use-associated lung injury ("EVALI"), which "has led to hospitalizations and deaths nationwide . . . . There have been 41 confirmed or probable EVALI cases in San Diego County as of December 18, 2019." *Id.* § 32.892(g). The County was particularly concerned with youth use of electronic smoking devices, which has increased since 2018. *Id.* § 32.892(f). Additionally, the FDA has not approved e-cigarettes as an aid to quit smoking, and "[s]tudies indicate no evidence of definitive long-term efficacy of e-cigarettes as a cessation aid . . . ." *Id.* § 32.891(c).

Plaintiff Neighborhood Market Association, Inc. ("NMA") is a nonprofit industry trade association whose members consist of tobacco retailers, wholesalers, and manufacturers located in the unincorporated areas of San Diego County. Complaint ("Compl.") ¶ 23, ECF No. 1. Plaintiff Vapin' the 619 is a vapor tobacco products retailer in San Diego County and an NMA member. *Id.* ¶ 24. Plaintiffs contend that if the Ordinance is not enjoined, they will suffer "severe financial impact and the resulting, inevitable financial ruin of their businesses." Mot. at 16. Plaintiffs allege that as a result of the Ordinance and the added strain of COVID-19, Plaintiffs "will never be able to fully re-open their businesses or retain their employees." *Id.*

### PROCEDURAL HISTORY

On June 19, 2020, Plaintiffs filed their Complaint seeking declaratory and injunctive relief against the County. *See generally* Compl. On June 29, 2020, Plaintiffs filed their Motion for a Preliminary Injunction. *See generally* Mot. The County filed its Response in Opposition to Plaintiffs' Motion ("Opp'n," ECF. No. 11), and Plaintiffs filed a Reply in support of their Motion ("Reply," ECF No. 13). This action was originally assigned to the Honorable Marilyn L. Huff, but the action was transferred to this Court on August 3, 2020, when Judge Huff recused herself. *See generally* ECF No. 14. On August 3, 2020, the

County filed its Motion to Dismiss for Failure to State a Claim. *See generally* MTD. Plaintiffs filed a Response in Opposition to the County's Motion (ECF No. 21), and the County filed a Reply in support of its Motion to Dismiss (ECF No. 23).

On July 9, 2020, R.J. Reynolds Tobacco Company, R.J. Reynolds Vapor Company, and Santa Fe Natural Tobacco Company, Inc. ("R.J. Reynolds Plaintiffs") filed a complaint seeking declaratory and injunctive relief against the County based on the same Ordinance. *See R.J. Reynolds Tobacco Company v. County of San Diego*, Case No. 3:20-cv-01290-JLS-WVG.   R.J. Reynolds Plaintiffs filed a notice of related case and requested that the action be transferred to this Court. *See generally* 20cv1290, ECF No. 4.  The case was transferred pursuant to the low-number rule on July 16, 2020 (*see* 20cv1290, ECF No. 5), and was reassigned to this Court on August 4, 2020 alongside the present action (*see* 20cv1290, ECF No. 18).

On August 28, 2020, California Governor Gavin Newsom approved California Senate Bill 793 ("S.B. 793"), which prohibits the sale of flavored tobacco products or tobacco product flavor enhancers in California. *See generally* S.B. 793, Act of Aug. 28, 2020, 2020 Cal. Legis. Serv. ch. 34 (to be codified at Cal. Health & Safety Code § 104559.5).  The Court requested supplemental briefing on the impact of S.B. 793 on Plaintiffs' present claims related to the Ordinance. *See* ECF No. 22.  Plaintiffs filed a supplemental brief on October 15, 2020, and the County filed a response on October 22, 2020.  ECF Nos. 24, 25.  A referendum challenging S.B. 793 has suspended the operation of the statewide flavored tobacco products sales ban unless and until it is approved by a majority of voters in the November 8, 2022 election. *See* Cal. Sec. of State, Nov. 8, 2022 Qualified Statewide Ballot Measures, at https://www.sos.ca.gov/elections/ballot-measures/qualified-ballot-measures (last visited Mar. 19, 2021).  Because S.B. 793 is not currently in effect, the Court will not examine the effect of the state statute on the present action.

///

///

1

## MOTION FOR PRELIMINARY INJUNCTION[1]

2
3
4
5
6

Plaintiffs request that the Court preliminarily enjoin Defendant from enforcing the San Diego County flavored smoking products and electronic smoking device sales ban. Mot. at 19.  Plaintiffs argue the Ordinance is unconstitutional because it is expressly and impliedly preempted by the Family Smoking Prevention and Tobacco Control Act ("FSPTCA").

7

## I.    Legal Standard

8
9
10
11
12
13
14
15
16
17
18
19
20

A preliminary injunction is an equitable remedy aimed at preserving the status quo and preventing the occurrence of irreparable harm during the course of litigation.  *See* Fed. R. Civ. P. 65.  "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008).  "A preliminary injunction is an extraordinary remedy never awarded as a matter of right."  *Id.* at 24.  Although a plaintiff seeking a preliminary injunction must make a showing on each factor, the Ninth Circuit employs a "version of the sliding scale" approach where "a stronger showing of one element may offset a weaker showing of another."  *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131–35 (9th Cir. 2011).  "[W]hen a plaintiff has failed to show the likelihood of success on the merits, we 'need not consider the remaining three [*Winter* elements].'"  *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en

21
22

---

23
24
25
26
27
28

[1] On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court may take into account the Parties' pleadings, any documents physically attached to those pleadings or incorporated by reference therein, and any documents properly subject to judicial notice.  *See, e.g.*, *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) (judicial notice and incorporation by reference); *Vasquez v. Los Angeles Cnty.*, 487 F.3d 1246, 1249 (9th Cir. 2007) (Rule 12(b)(6) motion).  "Nonetheless, in deciding a motion for preliminary injunction—unlike a motion to dismiss—the Court is not limited solely to the pleadings and may consider affidavits or declarations along with other evidence submitted by the parties."  *Walker v. Woodford*, 454 F. Supp. 2d 1007, 1024 (S.D. Cal. 2006) (citing Fed. R. Civ. P. 65; *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981); *Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984)), *aff'd*, 393 F. App'x 513 (9th Cir. 2010).  The Court is guided by these legal principles in its Analysis, *infra* Section II.

banc) (alterations in original) (quoting *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 944 (9th Cir. 2013)).

## II.   Analysis

Plaintiffs argue that the flavored smoking products and electronic smoking devices sales ban violates the Supremacy Clause because the Ordinance is expressly and impliedly preempted by the FSPTCA, 21 U.S.C. §§ 387–387u.  *See generally* Compl.  The Court will address Plaintiffs' express and implied preemption arguments in turn.

### A.   *Express Preemption*

In determining whether the ordinances are expressly preempted by the FSPTCA, Congress's intent "is the ultimate touchstone."  *Wyeth v. Levine*, 555 U.S. 555, 565 (2009) (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996)).  "Where the federal statute contains an express preemption clause, we must determine the substance and scope of the clause."  *Ass'n des Éleveurs de Canards et d'Oies du Quebec v. Becerra*, 870 F.3d 1140, 1146 (9th Cir. 2017).  In so doing, the court assumes "that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress."  *Medtronic, Inc.*, 518 U.S. at 485 (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)).  And finally, "when the text of a pre-emption clause is susceptible of more than one plausible reading, courts ordinarily 'accept the reading that disfavors preemption.'"  *Altria Grp., Inc. v. Good*, 555 U.S. 70, 77 (2008) (quoting *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 449 (2005)).

With these principles in mind, the Court begins its analysis with the plain language of the statute.  The FSPTCA amends the Federal Food, Drug, and Cosmetic Act ("FDCA") to grant the FDA "the authority to regulate tobacco products."  H.R. Rep. No. 111–58, pt. 1, at 2 (2009) (the "FSPTCA Report").  The FSPTCA defines a "tobacco product" as "any product made or derived from tobacco that is intended for human consumption, including any component, part, or accessory of a tobacco product (except for raw materials other than tobacco used in manufacturing a component, part, or accessory of a tobacco product)," provided that such product is not "an article that is a drug under [21 U.S.C. § 321](g)(1), a

7

device under [21 U.S.C. § 321](h), or a combination product described in [21 U.S.C. § 353](g)." 21 U.S.C. § 321(rr)(1)–(2).[2]

The FSPTCA grants the FDA "the authority to regulate the sale, distribution, advertising, promotion, and use of tobacco products if such actions would be in the interest of the public health," FSPTCA Report at 26, but prohibits the FDA from "banning a class of nicotine products, such as all cigarettes, or reducing the nicotine level [of such products] to zero," *id.* at 2. The Act also "requires the [FDA] to establish tobacco product standards to protect the public health." *Id.*

Section 916 of the FSPTCA, entitled "Preservation of State and Local Authority," contains three clauses that address the power of state and local governments to enact laws relating to tobacco products: a preservation clause, a preemption clause, and a savings clause. *See* 21 U.S.C. § 387p(a). The interaction of these three clauses governs whether the ordinances are expressly preempted. First, the Preservation Clause explains that the FSPTCA preserves state and local authority to enact and enforce:

> any law, rule, regulation, or other measure with respect to tobacco products that is in addition to, or more stringent than, requirements established under this subchapter, including a law, rule, regulation, or other measure relating to or prohibiting the sale, distribution, possession, exposure to, access to, advertising and promotion of, or use of tobacco products by individuals of any age, information reporting to the State, or measures relating to fire safety standards for tobacco products.

*Id.* § 387p(a)(1). The broad authority preserved for the state and local governments is limited only to the extent that a local law contravenes one of the specific prohibitions enumerated in the Preemption Clause. The Preemption Clause expressly preempts:

///

---

[2] On May 10, 2016, the FDA exercised the authority Congress conferred upon it in 21 U.S.C. § 387a(b) to deem electronic cigarettes, the type at issue in the Ordinance, to be "tobacco products" subject to the FSPTCA. Deeming Rule, 81 Fed. Reg. at 28,976 ("Products that meet the statutory definition of 'tobacco products' include . . . ENDS (including e-cigarettes, e-hookah, e-cigars, vape pens, advanced refillable personal vaporizers, and electronic pipes) . . . .").

> any requirement which is different from, or in addition to, any requirement under the provisions of this subchapter relating to tobacco product standards, premarket review, adulteration, misbranding, labeling, registration, good manufacturing standards, or modified risk tobacco products.

*Id.* § 387p(a)(2)(A).   However, state and local laws that would otherwise fall within the Preemption Clause are exempted if they fall within the Savings Clause, which clarifies that the Preemption Clause:

> does not apply to requirements relating to the sale, distribution, possession, information reporting to the State, exposure to, access to, the advertising and promotion of, or use of, tobacco products by individuals of any age, or relating to fire safety standards for tobacco products.

*Id.* § 387p(a)(2)(B).

The Second Circuit has held that when these three clauses are read in conjunction, the FSPTCA "distinguishes between manufacturing and the retail sale of finished products; it reserves regulation at the manufacturing stage exclusively to the federal government, but allows states and localities to continue to regulate sales and other consumer-related aspects of the industry in the absence of conflicting federal regulation." *U.S. Smokeless Tobacco Mfg. Co. v. City of New York*, 708 F.3d 428, 434 (2d Cir. 2013).

Plaintiffs argue that the flavored smoking products and electronic smoking devices sales ban is an impermissible tobacco products standard, such that the Ordinance would fall within the FSPTCA's Preemption Clause.  *See* Mot. 6–9.  Plaintiffs contend that they are likely to succeed on the merits of their claim because the Ordinance "establishes a tobacco product standard different from federal law, and thus [is] expressly preempted." Mot. at 6–7.  Specifically, Plaintiffs argue that the FSPTCA expressly vests "the FDA with authority to regulate the sale and distribution of certain tobacco products through the adoption of 'tobacco products standard.'"  *Id.* at 7.  Plaintiffs maintain that under the FSPTCA, tobacco product standards include "provisions respecting the . . . additives . . . of the tobacco product."  *Id.* at 8 (quoting 21 U.S.C. § 387g(a)(4)(B)(i)).   Because

additives include "substances intended for use as flavorings," 21 U.S.C. § 387(1), Plaintiffs argue that tobacco product standards include any provision "respecting the substances intended for use as a tobacco-product flavoring," Mot. at 8. Plaintiffs argue the Ordinance creates a "substantially more prohibitive and arbitrary tobacco product standard" and "is intended to explicitly regulate certain ingredients as it allows an exception for flavored smoking products containing 'molasses, honey, fruit pulp, or dried fruits.'" *Id.* at 9. The Plaintiffs further argue that the Savings Clause does not save the Ordinance. *Id.* at 11.

The County maintains that because the Ordinance is a sales ban and not a tobacco product standard, there is no conflict with the FSPTCA. Opp'n at 13. Even if the Court were to find the sales ban a tobacco product standard, the County argues that the Savings Clause acts to save the Ordinance because it contains "requirements relating to the sale" of tobacco products. *See* 21 U.S.C. § 387p(a)(2)(B).

To determine whether the Ordinance is expressly preempted, the Court must first determine whether the two aspects of the Ordinance constitute tobacco product standards within the meaning of the FSPTCA. The Court will first examine the flavored smoking products sales ban, and then the temporary electronic smoking device sales ban.

Generally, section 387g governs tobacco product standards, although the term "tobacco product standards" is not expressly defined in the FSPTCA. *See generally* 21 U.S.C. § 387g. The FSPTCA describes the tobacco product standards as including "provisions that are appropriate for the protection of the public health." *Id.* § 387g(a)(4). Tobacco product standards include "provisions respecting the construction, components, ingredients, additives, constituents, including smoke constituents, and properties of the tobacco product"; testing provisions; provisions for nicotine yields; provisions for measurement of tobacco-product characteristics; provisions related to labeling; and "a provision requiring that the sale and distribution of the tobacco product be restricted but only to the extent that the sale and distribution of a tobacco product may be restricted under a regulation under section 387f(d) of this title." *Id.* § 387g(a)(4). Section 387f(d)

states that the sale and distribution of a tobacco product may be restricted by regulation if the Secretary determines that such regulation would be appropriate "for the protection of the public health." *Id.* § 387f(d).

The FSPTCA sets out two tobacco product standard "[s]pecial rules" and gives the FDA authority to revise those rules as well as adopt additional tobacco standards. *Id.* § 387g(a)(3). The "[s]pecial rule for cigarettes" concerns the flavor of cigarettes. The rule prohibits cigarettes from:

> contain[ing], as a constituent (including a smoke constituent) or additive, an artificial or natural flavor (other than tobacco or menthol) or additive, an artificial or natural flavor (other than tobacco or menthol) or an herb or spice, including strawberry, grape, orange, clove, cinnamon, pineapple, vanilla, coconut, licorice, cocoa, chocolate, cherry, or coffee, that is a characterizing flavor of the tobacco product or tobacco smoke.

*Id.* § 387g(a)(1)(A) (the "Special Rule"). The Special Rule "is intended to prohibit the manufacture and sale of cigarettes with certain 'characterizing flavors' that appeal to youth." FSPTCA Report at 37.

Referring to the Special Rule, Plaintiffs argue that "if a ban on all flavored cigarettes except tobacco and menthol is a tobacco product standard, then a local ordinance that bans all flavored vapor tobacco products . . . is a tobacco product standard as well." Mot. at 8. However, the Second Circuit has held that a tobacco product standard is a manufacturing regulation, and therefore a sales regulation like the one at issue here is not a tobacco product standard unless it "clearly infringe[s] on the FDA's authority to determine what chemicals and processes may be used in making tobacco products." *U.S. Smokeless Tobacco Mfg. Co.*, 708 F.3d at 434–35; *see also R.J. Reynolds Tobacco Co. v. Cnty. of Los Angeles*, 471 F. Supp. 3d 1010, 1015 (C.D. Cal. 2020) ("[A] sales ordinance that does not direct manufacturers as to which ingredients they may or may not include is not a preempted tobacco product standard."). The Ordinance does not "direct manufacturers as

1    to which ingredients they may or may not include in their products." *U.S. Smokeless*
2    *Tobacco Mfg. Co.*, 708 F.3d at 435.

3         Plaintiffs' contention that tobacco product standards include "provisions respecting
4    the . . . additives . . . of the tobacco product," Mot. at 8, is correct, but the Ordinance at
5    issue here does not concern additives.  The Ordinance only bans the sale or distribution
6    "of all flavored smoking products . . . ."  San Diego County, Cal., Code of Regulatory
7    Ordinances, tit. 3, div. 2, ch. 8.8, § 32.883(a).  Flavored smoking products are defined as
8    products that "emit[] a taste or smell, other than the taste or smell of tobacco," but the
9    Ordinance makes no mention of permitted or banned ingredients.  This is a sales ban
10   directed at what end products are available to consumers, not a directive to manufacturers
11   about what materials are permitted to make tobacco products.  The latter would be a
12   tobacco product standard falling within the Preemption Clause, but the former is explicitly
13   contemplated by the FSPTCA and permitted.  Therefore, the Ordinance's sales ban does
14   not regulate additives and cannot be considered a tobacco product standard.  This result is
15   required by the express terms of the FSPTCA, which state that the Act is not to be
16   "construed to limit the authority of . . . a State or political subdivision of a State . . . to
17   enact . . . and enforce any . . . measure . . . prohibiting the sale . . . of tobacco products."
18   21 U.S.C. § 387p(a)(1).

19        Some courts have held that a sales ban could be considered a tobacco product
20   standard if the sales ban is a de facto manufacturing regulation.  *See U.S. Smokeless*
21   *Tobacco Mfg. Co.*, 708 F.3d at 435 n.2.  An example of such a de facto manufacturing
22   regulation can be found in the law at issue in *National Meat Association v. Harris*, 565
23   U.S. 452 (2012).   In *National Meat Association*, a California law prohibited
24   slaughterhouses from buying, processing, or selling nonambulatory animals or their meat.
25   *See id.* at 458–59.  The prohibition on the sale of meat derived from nonambulatory
26   animals was preempted by the Federal Meat Inspection Act because the "idea – and the
27   inevitable effect – of the provision is to make sure that slaughterhouses remove
28   nonambulatory pigs from the production process."  *Id.* at 464.  Therefore, the sales ban in

*National Meat Association* was preempted because the law "serves to regulate how slaughterhouses must deal with non-ambulatory pigs on their premises." *Id.* The only way to determine whether a product was banned under the law in *National Meat Association* was to consider how it was manufactured. This is not analogous to the present regulation, which does not regulate how tobacco manufacturers manufacture products, but instead determines what end products are allowed on retail shelves based on identifiable end product characteristics.

The Honorable Dale S. Fischer of the U.S. District Court for the Central District of California examined a similar ordinance in Los Angeles County that banned the sale of flavored tobacco products. *See generally Cnty. of Los Angeles*, 471 F. Supp. 3d 1010. The Central District court concluded that the Los Angeles County sales ban on flavored tobacco products is not a de facto manufacturing regulation because the ordinance banned the sale of "products [that] can be identified based on how they are marketed and sold." *Id.* Similarly, the San Diego County Ordinance at issue here identifies banned products based on whether they "emit[] a taste or smell, other than the taste or smell of tobacco . . . ." San Diego County, Cal., Code of Regulatory Ordinances, tit. 3, div. 2, ch. 8.8, § 32.882(b) (2020). Therefore, the ingredients or additives used by the manufacturer are irrelevant because the banned products are identifiable at the consumer stage if the product emits a smell or taste other than tobacco.

Plaintiffs argue that because the Ordinance creates an exception for shisha, which is defined as "flavored smoking products containing molasses, honey, fruit pulp, or dried fruits," the Ordinance is in fact seeking to regulate ingredients. Mot. at 9. The County contends that this exception is not a manufacturing standard, but "in recognition of the cultural significance of hookahs to many of Middle Eastern descent." Opp'n at 16.

Plaintiffs' characterization of the shisha exception as a regulation on added ingredients is misleading. The Ordinance does not create an exception based on permitted ingredients, which might constitute a tobacco product standard, but instead exempts "shisha for use in a hookah." San Diego County, Cal., Code of Regulatory Ordinances,

tit. 3, div. 2, ch. 8.8, § 32.883(b) (2020).  The fact that shisha is traditionally manufactured with certain ingredients does not mean that the Ordinance is regulating permitted ingredients, simply that it is describing a particular end product that is exempt from the sales ban.

Of the courts that have examined the constitutionality of flavored tobacco product sales bans, only one has found the ban falls within the definition of tobacco product standards in the FSPTCA.  *See R.J. Reynolds Tobacco Co. v. City of Edina*, No. 20-CV-1402 (PJS/LIB), 2020 WL 5106853, at *4 (D. Minn. Aug. 31, 2020).  The *Edina* court found that "tobacco-product standards include 'provisions respecting the . . . properties' of tobacco products, and there can be no dispute that a provision respecting the flavor of a tobacco product is a provision respecting a 'propert[y]' of that product." *Id.* (quoting 21 U.S.C. § 387g(a)(4)).  This made no difference in the outcome of the case, however, because the *Edina* court found that, "[o]n its face, the Ordinance falls within the scope of the Savings Clause, as it is a 'requirement[ ] relating to the sale . . . of . . . tobacco products by individuals of any age . . . .'" *Id.* (quoting 21 U.S.C. § 387p(a)(2)(B)) (alterations in original).  However, this Court follows the Second Circuit, which held that this reading of the Preemption Clause is overly broad.  *See U.S. Smokeless Tobacco Mfg. Co.*, 708 F.3d at 434.  If the Court found that a retail sales ban on end products is a preempted tobacco product standard, it "would render superfluous § 916's three-part structure . . . [and] vitiate the preservation clause's instruction that the Act not be 'construed to limit the authority of . . . a State or political subdivision of a State . . . to enact . . . and enforce any . . . measure . . . prohibiting the sale . . . of tobacco products.'" *Id.* (quoting 21 U.S.C. § 387p(a)(1)) (alterations in original).  If possible, statutes should be construed to give effect to every clause and word.  *See, e.g.*, *Babbitt v. Sweet Home Chapter of Cmtys. for a Great Or.*, 515 U.S. 687, 698 (1995) (describing the Court's "reluctance to treat statutory terms as surplusage").  Accordingly, Plaintiffs' argument is unavailing.

Other courts that have addressed whether similar local ordinances banning or restricting access to flavored tobacco products were preempted by the FSPTCA have

uniformly held that they were not.  *See, e.g.*, *Nat'l Ass'n of Tobacco Outlets v. City of Providence*, 731 F.3d 71, 82–83, 85 & n.11 (1st Cir. 2013) (holding that tobacco product sales regulations are not tobacco product standards preempted by the FSPTCA and stating that "whether those regulations have an impact on manufacturing is irrelevant"); *U.S. Smokeless Tobacco Mfg. Co.*, 708 F.3d at 436 (holding an ordinance that banned the sale of flavored tobacco products was not preempted by the FSPTCA); *Cnty. of Los Angeles*, 471 F. Supp. 3d at 1018 (same); *Indeps. Gas & Serv. Stations Ass'ns v. City of Chicago*, 112 F. Supp. 3d 749, 754 (N.D. Ill. 2015) (holding that ordinance that restricted sale of flavored tobacco near schools was not preempted by the FSPTCA); *City of Edina*, 2020 WL 5106853, at *3 (holding a ban on the sale of flavored tobacco products was a tobacco product standard that falls within the Savings Clause and is therefore not preempted by the FSPTCA).  While not binding on this Court, the findings of these courts are persuasive. Accordingly, the Court finds that the Ordinance's sales ban on flavored smoking products is not a tobacco product standard and therefore is not expressly preempted by the FSPTCA.

Next, Plaintiffs argue that the Ordinance's temporary ban on the sale or distribution of electronic smoking devices is preempted as an impermissible tobacco product standard. Mot. at 10–11.  The temporary ban on the sale of electronic smoking devices in San Diego County expired on February 28, 2021.  San Diego County, Cal., Code of Regulatory Ordinances, tit. 3, div. 2, ch. 8.8, § 32.893(a) (2020).  The San Diego County Board of Supervisors adopted Ordinance No. 10699 on December 8, 2020, which does not reinstate the ban on the sale of electronic smoking devices.  *See generally* San Diego County, Cal., Code of Regulatory Ordinances, tit. 2, div. 1, ch. 26, §§ 21.2601–21.2610 (2021). Therefore, the Court must first examine whether the relief Plaintiffs seek in their preliminary injunction request is moot.

Under the voluntary cessation exception, a defendant's decision to stop a challenged practice generally "does not deprive a federal court of its power to determine the legality of the practice."  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S.

167, 189 (2000) (quoting *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982)). However, a case may become moot if subsequent events make "it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* (citing *United States v. Concentrated Phosphate Exp. Ass'n*, 393 U.S. 199, 203 (1968)). "The 'heavy burden of persua[ding]' the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness." *Id.* (quoting *Concentrated Phosphate Exp. Ass'n*, 393 U.S. at 203) (alterations in original).

Here, Defendant does not argue that Plaintiffs' claims regarding the temporary ban on the sale or distribution of electronic smoking devices are moot. Although the temporary ban has ended and it was not reinstated in a subsequent County ordinance, it is not "absolutely clear" to the Court that the County could not reinstate the ban on the sale of electronic smoking devices. Therefore, the Court will examine the merits of Plaintiffs' argument.

Plaintiffs state the Ordinance "indiscriminately prohibits the sale of . . . all electronic smoking devices without affording any exceptions . . . ." Mot. at 10–11. Plaintiffs argue this creates a "more severe tobacco product standard[]" than the FSPTCA. Mot. at 9. Plaintiffs fail to articulate, however, how a sales ban on a device falls within the Preemption Clause.

The Preservation Clause expressly preserves state and local governments' power to enact ordinances "more stringent than[] requirements established under this subchapter, including a law, rule, regulation, or other measure relating to or prohibiting the sale, distribution . . . or use of tobacco products by individuals of any age . . . ." 21 U.S.C. § 387p(a)(1). The statutory language expressly allows "more stringent" regulations prohibiting sales. To bring the electronic cigarette ban into the Preemption Clause, it would have to be a tobacco product standard; however, the arguments related to flavored smoking products regarding ingredients and additives are not applicable to electronic smoking devices. Plaintiffs have not articulated any other theory of express preemption. ///

Accordingly, the Court concludes that the Ordinance's temporary ban on the sale or distribution of electronic smoking devices is not a tobacco product standard.

In the absence of Ninth Circuit authority, this Court follows the First and Second Circuits and concludes that the sales regulations in the Ordinance do not "clearly infringe on the FDA's authority to determine what chemicals and processes may be used in making tobacco products." *U.S. Smokeless Tobacco Mfg. Co.*, 708 F.3d at 434; *see also Nat'l Ass'n of Tobacco Outlets*, 731 F.3d at 85. Therefore, the Ordinance does not constitute a tobacco product standard, and Plaintiffs are unlikely to succeed on the merits of their express preemption claim.

### B.   Implied Preemption

Next, Plaintiffs argue that the Ordinance is impliedly preempted "because it 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" Mot. at 14 (citing *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373 (2000)). Plaintiffs contend that the sales ban (1) undermines the ability of the FDA to set national standards for the manufacturing of tobacco products, and (2) undermines Congress and the FDA's judgment that certain flavored smoking and tobacco products should remain on the market. *Id.* at 14–15. In response, the County argues that the FSPTCA's preemption clause indicates the scope of Congress's desire to preempt local legislation. Opp'n at 19.

In analyzing implied preemption, "[a]s with express preemption, courts assume that the historic police powers of the States are not superseded unless that was the clear and manifest purpose of Congress." *Ass'n des Éleveurs de Canards et d'Oies du Quebec*, 870 F.3d at 1149. "Implied preemption analysis does not justify a 'freewheeling judicial inquiry into whether a state statute is in tension with federal objectives'; such an endeavor 'would undercut the principle that it is Congress rather than the courts that pre-empts state law.'" *Chamber of Commerce of U.S. v. Whiting*, 563 U.S. 582, 607 (2011) (quoting *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 111 (1992)). The language of the FSPTCA's Preemption Clause "implies that matters beyond that reach are not pre-empted."

*Ass'n des Éleveurs de Canards et d'Oies du Quebec*, 870 F.3d at 1149 (quoting *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 517 (1992)); *see Graham v. R.J. Reynolds Tobacco Co.*, 857 F.3d 1169, 1186 (11th Cir. 2017) ("Congress' intent, of course, primarily is discerned from the language of the pre-emption statute and the 'statutory framework' surrounding it.").

First, Plaintiffs argue that the Ordinance is impliedly preempted because Congress adopted the FSPTCA "to set national standards [to] control the manufacture of tobacco products and the . . . amount of ingredients used in such products." Mot. at 14. This argument is unavailing because the Court concluded that the Ordinance does not set a manufacturing standard or regulate the ingredients used in tobacco products. *See supra* Section II.A. Generally, a ban on certain finished tobacco products will not cause manufacturers to change the ingredients they use or the way that they manufacture products; however, it is conceivable that a large enough sales ban on certain products could change manufacturing behavior. *See City of Edina*, 2020 WL 5106853, at *6 ("[I]f every municipality in the United States adopted a similar ordinance, that would as a practical matter amount to a nationwide ban on the use of certain ingredients, because it would become impossible for manufacturers to sell a product that contained those ingredients."). However, this Court already determined that the Ordinance does not regulate the ingredients or additives used in products because the Ordinance regulates the sale of end products based on characterizing smells and tastes. The "clear and manifest purpose of Congress," *Ass'n des Éleveurs de Canards et d'Oies du Quebec*, 870 F.3d at 1149, was to preserve state and local authority to enact such sales bans, as evidenced by the Preservation Clause. The Ordinance classifies end products based on characterizing flavors or smells; therefore, the Ordinance does not infringe on the FSPTCA's authority to regulate the ingredients used in tobacco products.

Second, Plaintiffs contend that the Ordinance undermines Congress and the FDA's "judgment that certain flavored tobacco product should remain on the market." Mot. at 14. This argument ignores that the FSPTCA expressly gives states and local governments the

power to prohibit the sale of tobacco products, even if those sales bans are stricter than the federal ban, so long as the regulation is not covered by the Preemption Clause.  *See U.S. Smokeless Tobacco Mfg. Co.*, 708 F.3d at 433 ("While § 907(d)(3) prohibits the FDA from banning entire categories of tobacco products throughout the country, 21 U.S.C. § 387g(d)(3), the FSPTCA nowhere extends that prohibition to state and local governments.   To the contrary, the preservation clause of § 916 expressly preserves localities' traditional power to adopt any 'measure relating to or prohibiting the sale' of tobacco products." (footnote omitted)); *see also Berger v. Philip Morris USA, Inc.*, 185 F. Supp. 3d 1324, 1340–41 (M.D. Fla. 2016), *aff'd sub nom. Cote v. R.J. Reynolds Tobacco Co.*, 909 F.3d 1094 (11th Cir. 2018) ("[S]tate-law prohibitions on cigarette sales can stand side-by-side with the fact that Congress has tolerated cigarettes and purposefully refrained from banning them.").  By the very language of the FSPTCA, a stricter sales ban can stand side-by-side with federal regulations.

Plaintiffs argue that if Congress chooses not to act against a particular product, like menthol cigarettes, Congress affirmatively intends for that product to remain on the market. *See* Mot. at 14–15.  However, failure to take active steps to prohibit a product is not equivalent to an affirmative decision that the product should remain on the national market. *Cf. Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 758 (9th Cir. 2015) (rejecting the defendant's argument that "the FDA's failure to issue specific regulations on [use of the word 'natural'] is tantamount to a conscious decision by the agency to permit any use of this term a manufacturer sees fit").

Accordingly, the Court finds the Ordinance does not stand as an obstacle to the objectives of the FSPTCA, and Plaintiffs have not shown a likelihood of success on the merits of their implied preemption claim.  The Court need not address the remaining factors necessary for injunctive relief because Plaintiffs have failed to establish any chance of success on the merits of their express preemption or implied preemption claims.  *See Garcia*, 786 F.3d at 740.  Therefore, the Court **DENIES** Plaintiffs' Motion for Preliminary Injunction.  *See, e.g.*, *Sports Form, Inc. v. United Press Int'l, Inc.*, 686 F.2d 750, 753 (9th

Cir. 1982) (affirming district court's denial of preliminary injunction where the plaintiff "had failed to show any chance of success on the merits," which "made a determination of potential injury or a balancing of hardships unnecessary").

## MOTION TO DISMISS

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted," generally referred to as a motion to dismiss. The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 "does not require 'detailed factual allegations,' . . . it [does] demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A complaint will not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 557).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6). A claim is facially plausible when the facts pled "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 556). That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Facts "'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557). This review requires context-specific analysis involving the Court's "judicial experience and common sense." *Id.* at 678 (citation omitted). "[W]here

1    the well-pleaded facts do not permit the court to infer more than the mere possibility of

2    misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is

3    entitled to relief.'" *Id.*

4         Where a complaint does not survive 12(b)(6) analysis, the Court will grant leave to

5    amend unless it determines that no modified contention "consistent with the challenged

6    pleading . . . [will] cure the deficiency." *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655,

7    658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d

8    1393, 1401 (9th Cir. 1986)).

9         Defendant seeks to have Plaintiffs' Complaint dismissed for failure to state a claim

10   because there is no plausible argument that the Ordinance is expressly or impliedly

11   preempted. *See generally* MTD. Defendant argues that "the Complaint does not contain

12   any factual matter showing that Plaintiffs' claims are plausible and there are no

13   amendments Plaintiffs could allege to make their claims plausible." *Id.* at 9. Plaintiffs

14   bring only the two claims for express and implied preemption. *See generally* Compl. The

15   Court already examined the merit of these claims *supra* at Sections II.A–II.B.

16        The Court previously found that Plaintiffs have not proven a likelihood of success

17   on the merits of their express and implied preemption claims. Therefore, the Court

18   **GRANTS** Defendant's Motion to Dismiss Plaintiffs' Complaint, as the Court does not find

19   Plaintiffs' preemption claims plausible in light of the plain statutory language of the

20   Ordinance and the FSPTCA. *See Angelotti Chiropractic, Inc. v. Baker*, 791 F.3d 1075,

21   1088 (9th Cir. 2015) (reversing district court's grant of preliminary injunction where there

22   was no "serious question" going to the merits of the claim and, consequently, reversing

23   district court's denial of motion to dismiss as to that claim); *Kelley v. Mortg. Elec.*

24   *Registration Sys., Inc.*, 642 F. Supp. 2d 1048, 1059 (N.D. Cal. 2009) (granting motions to

25   dismiss and therefore denying motion for preliminary injunction for failure to show

26   likelihood of success on the merits); *Washington v. O'Dell*, No. 3:17-CV-1615-MMA-

27   PCL, 2018 WL 1942372, at *10 (S.D. Cal. Apr. 25, 2018) (denying preliminary injunction

28   when granting motion to dismiss); *Physician's Surrogacy, Inc. v. German*, No. 17CV718-

MMA (WVG), 2018 WL 638229, at *11 (S.D. Cal. Jan. 31, 2018) (same); *Wallace v. Sosa*, No. 16-CV-01501-BAS-BGS, 2017 WL 469140, at *4–5 (S.D. Cal. Feb. 3, 2017) (same); *Ananiev v. Aurora Loan Servs., LLC*, No. C 12-2275 SI, 2012 WL 2838689, at *8 (N.D. Cal. July 10, 2012) (same).

## CONCLUSION

For the reasons discussed above, the Court **DENIES** Plaintiffs' Motion for Preliminary Injunction (ECF No. 4) and **GRANTS** Defendant's Motion to Dismiss (ECF No. 12). Plaintiffs' Complaint is **DISMISSED WITHOUT PREJUDICE**. Plaintiffs may file an amended complaint within <u>thirty (30) days</u> of the date on which this Order is electronically docketed.

**IT IS SO ORDERED.**

Dated: March 29, 2021

Hon. Janis L. Sammartino
United States District Judge

20-CV-1124 JLS (WVG)